**THIS OPINION IS A
PRECEDENT OF THE TTAB**

Mailed:
July 17, 2009

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Husqvarna Aktiebolag

————

Serial No. 78899587

————

Michael W. Garvey of Pearne & Gordon LLP for Husqvarna
Aktiebolag

Michael Webster, Trademark Examining Attorney, Law Office
102 (Karen M. Strzyz, Managing Attorney)

————

Before Seeherman, Walters and Rogers, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

Husqvarna Aktiebolag (applicant) has appealed from the

refusal of the trademark examining attorney to register HOP

as a service mark for "providing warranties to consumers

and retailers on power-operated outdoor products, namely,

power-operated chain saws, edgers, string trimmers,

tillers, hedge trimmers, brush cutters, blowers for yard

debris, blower/vacuum combinations, lawn mowers, lawn and

garden tractors, snow throwers, pressure washers, sweepers,

stump grinders, ice augers, generators, utility vehicles, pole saws, aerators, power rakes/dethatchers, seeders, sod cutters, concrete planers, grinders, groovers, masonry saws, concrete saws, metal cut-off saws, wall saws, wire saws, drills, floor saws, masonry saws, and file saws."[1] The examining attorney refused registration pursuant to Sections 1, 2, 3 and 45 of the Trademark Act, 15 U.S.C. §§1051, 1052, 1053 and 1127, on the ground that the activities set forth in the identification do not constitute a service within the meaning of the Trademark Act. In particular, the examining attorney asserts that offering a standard warranty for one's own products is not a separate service but is merely an activity that is incidental or ancillary to the sale of the goods.

Preliminarily, we note that applicant filed a request for reconsideration on November 7, 2007 and a notice of appeal on November 9, 2007. However, the Board was not aware of the request for reconsideration when it instituted the appeal on November 9 and therefore, in the order instituting the appeal, advised applicant that it had sixty days to file its appeal brief; applicant did so on January

---

[1] Application Serial No. 78899587, filed June 2, 2006, based on Section 1(b) of the Trademark Act, 15 U.S.C. §1051(b) (intent-to-use).

7, 2008.  On January 14, 2008, apparently unaware of the filing of either the notice of appeal or the appeal brief,[2] the examining attorney issued a non-final Office action denying the request for reconsideration.  This action stated that applicant's identification of services was unacceptable because it did not identify a service, and suggested that applicant amend its identification to reflect that it was offering extended warranties. Applicant declined to do so, and the examining attorney issued another final refusal requiring an amendment of the identification of services and refusing registration on the basis that "the activities recited in the identification of services are not registrable services as contemplated by the Trademark Act."  This action stated that the application would be returned to the Board for resumption of the appeal.  Applicant then submitted a second brief, requesting that, since there had been additional prosecution of the application subsequent to the filing of its initial brief, the new brief be considered.  The second appeal brief is therefore considered the operative brief in this appeal.

---

[2]  The TTABVUE database shows that the Board forwarded the electronic record of the application file to the examining attorney on January 7, 2008 for preparation of his brief.

We point out that, although the examining attorney stated in the second final Office action that he was requiring an amendment of the identification, this requirement in fact is part of the substantive refusal that applicant's activities do not constitute a service, and the suggested amendment to the identification was merely to have applicant identify its activities in a manner that would be acceptable so that its mark would be registrable as a service mark.  This was confirmed by the examining attorney's appeal brief, which discusses only whether applicant's activities constitute a service.  Accordingly, the only issue on appeal is whether applicant's activities, as set forth in its identification of services, constitute a service for which a service mark registration can be issued.

In In re Betz Paperchem, Inc., 222 USPQ 89, 90 (TTAB 1984), the Board noted with approval the criteria set forth in the Trademark Manual of Examining Procedure for determining whether an activity constitutes a service: (1) a service is the performance of some activity; (2) the activity must be for the benefit of someone other than the applicant; and (3) the activity must be recognizable as a separate activity, that is, it cannot be merely incidental

or necessary to applicant's larger business.[3]  There have been several cases that have considered whether providing a warranty constitutes a service.  In In re Orion Research, Incorporated, 669 F.2d 689, 187 USPQ 485, 486 (CCPA 1975), the Court held that the applicant's "guaranteeing instrument replacement" for goods of its own manufacture was not a separate service: the warranty was not separately offered apart from the sale of the goods, it was for a limited period of time, the applicant did not sell the same goods without the warranty at a lower price, and the applicant did not promote the warranty separately.  Looking at the cumulative effect of these factors, the Court found that the applicant "merely guarantees or warrants the performance of its own goods, rather than provides a service contemplated by the Lanham Act (Act).  Such guarantee or warranty may serve as an inducement in the sale of Orion's goods, but does not constitute a service separate therefrom."

---

[3]  At the time of the decision this criteria was found in TMEP §1301.01; currently it appears in §1301.01(a), and has been reformulated slightly to: (1) a service must be a real activity; (2) a service must be performed to the order of, or for the benefit of, someone other than the applicant; and (3) the activity performed must be qualitatively different from anything necessarily done in connection with the sale of the applicant's goods or the performance of another service.

Similarly, in In re Lenox, Inc., 228 USPQ 966 (TTAB 1986), the Board held that "guaranty and warranty services offered in connection with retail jewelry store services" did not constitute a separate service for which service mark registration could be obtained, finding that repair and replacement services as to defective merchandise was within the sphere of Orion, and that applicant's additional diamond resetting and trade-in "privileges," which were not separately offered, promoted or charged for, were no more than an inducement to buy.

On the other hand, in In re Sun Valley Waterbeds Inc., 7 USPQ2d 1825 (TTAB 1988), the Board found "warranty services for promoting the sale of waterbeds" was a service within the contemplation of the Act. This was because the applicant, a retail store, was not selling goods of its own manufacture, and therefore the warranty was not viewed as an inducement in the sale of the applicant's own goods. In addition, the extended warranty offered by the applicant was over and above the norm of the industry. And in In re Otis Engineering Corporation, 217 USPQ 278 (TTAB 1982), the Board found that the applicant's quality control and quality assurance services, including testing and certification, was a service within the contemplation of Section 3 of the Act, rather than an activity incidental to

6

the sale of its goods, notwithstanding that the applicant

certified only its own goods. This was because of the

additional factors that there was a separate charge for the

certification services, the applicant's equipment and

products were offered for sale without these services, and

the certification services were not a time-limited

manufacturer's guarantee.

As stated in In re Sun Valley Waterbeds, Inc., 7

USPQ2d at 1826:

> With respect to those cases which
> pertain to warranties, the general rule
> which emerges is that guaranteeing or
> warranting the performance of the goods
> of one's own manufacture is not
> normally considered a service within
> the contemplation of the Lanham Act
> unless, for example, the guaranty is
> offered or charged for separately from
> the goods, or is sufficiently above and
> beyond what is normally expected so
> that the warranty is raised to the
> status of a separate service activity.

The examining attorney has, in attempting to show that

the present situation falls within the general rule,

submitted evidence that third parties offer warranties for

the same types of tools that applicant warranties. See,

for example, the website for BOSCH power tools, which

features a 3 year warranty, www.bosch-pt.com/warranty, and

the website for RIDGID power tools, which features a three

year warranty and 90-day satisfaction guarantee policy, www.ridgid.com.

However, applicant argues that there are factual differences between its activities and those cases in which an applicant was found not to be rendering a cognizable service. Applicant has explained that it manufactures numerous power-operated outdoor products, some of which may be sold with applicant's Husqvarna trademark and some of which may be sold under the brands and marks of third-party retailers, i.e., private-labeled. Applicant gives as an example that many of its products are sold through Sears and bear Sears' CRAFTSMAN trademark. Its warranty, identified by the mark HOP, is used, inter alia, for these private-labeled goods. However, aside from the HOP mark that identifies the warranty service, none of applicant's trademarks appears on the goods or identifies applicant as the source of the goods. "Applicant is not the owner of the … mark on the goods (i.e., the mark branding the product as presented to the consuming public)." Response filed July 14, 2008. As a result, according to applicant, those cases in which it was held that the offering of a warranty by the manufacturer of the goods is not a service are inapposite because, in terms of the ultimate consumers, the third-party sellers would be regarded as the

8

manufacturers of the products, rather than applicant. "[T]he warranty is provided by the Applicant as separate in identity from the good sold as labeled by the merchandiser…." Id. Therefore, the mark HOP would identify the source of the warranty, the service provided by applicant, while the private-label mark would identify a different source for the goods. "[T]he consuming public would seek warranty service from HOP as the warranty provider." Response filed Nov. 7, 2007. Or as applicant puts it, "the provider of the warranty is different from the entity identified as selling the product to the consuming public." Brief, p. 10.

We agree that under this scenario there is a sufficient distinction between the warranty service and the goods that applicant's warranty service would not be regarded as merely an inducement to purchase its goods because, in effect, the goods are not applicant's but are those of the company for whom applicant makes the private-labeled products. Because purchasers would make a distinction between the provider of the warranty and the provider of the goods, the warranty services are not merely ancillary to the sale of the goods. Just as the sources of the goods and the warranty would be understood to be separate, the warranty services would be viewed as separate

and distinct as well, and not as merely incidental to the sale of the goods.

Applicant also identifies retailers as the beneficiaries of its services.  Such retailers would include the companies for whom it private-labels the goods and who then sell them under their own brands.  These retailers would, of course, be aware that applicant is both the manufacturer of the goods and the source of the warranty, so the distinction discussed above would not apply to them.  We must therefore consider whether applicant's activities constitute a service vis-à-vis retailers.

Applicant has explained that some of the aspects of its service include "handling all of the claims that arise with the consuming public so that no claim are [sic] to be routed to the private label marketer, providing a call-in center to again avoid having anything routed to the private label market, settle with the consuming public concerning such claims, and in general provide support to the consuming public."  Response filed July 14, 2008.  Because applicant's provision of warranties avoids the need of the retailer to provide a warranty itself, and because applicant essentially handles the work involved in managing

warranty claims, applicant's activities constitute a service that applicant renders to retailers.

Thus, we find that the activities as identified in the application constitute a cognizable service under the Lanham Act.

We must point out that in the cases cited by both applicant and the examining attorney as to whether the identification recites a cognizable service the Board and the Courts have had the opportunity to determine this through an examination of the specimens submitted with the application. However, in the present case applicant filed its application based on an intent to use the mark, and it has not filed an amendment to allege use. Therefore, we do not have any specimens upon which we can base a determination as to whether applicant is actually performing a service, and must rely on the statements made by applicant describing what its activities are. Accordingly, although we find on the basis of these statements that applicant's warranties to consumers and retailers constitute the rendering of services within the meaning of Section 3 of the Trademark Act, if the specimens applicant submits with its statement of use fail to show that the mark is used for services as described by applicant, it would be appropriate for the examining

11

attorney, at the time he examines the statement of use, to refuse registration on this basis.[4]

Decision:  The refusal of registration is reversed.

---

[4]  Moreover, if a registration were to issue for the identified services and applicant were to cease using the mark for warranty services as described during the prosecution of this application, e.g., if applicant were to use the mark HOP only for warranties in connection with goods it manufactures and sells under its own marks rather than third-party or private-label brands, such registration would be vulnerable to cancellation because applicant is not using the mark on cognizable services.